Filed 3/23/23; Certified for Publication 4/11/23 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re T.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E079346 |
| Plaintiff and Respondent, | (Super.Ct.No. J286190) |
| v. | OPINION |
| T.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Bryan K. Stodghill, Judge. Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

In May 2022, the juvenile court granted a motion to transfer defendant minor T.A. from juvenile court to a court of criminal jurisdiction. T.A. argues we must remand so the juvenile court can reconsider its ruling in light of recent ameliorative changes to the law enacted by Assembly Bill No. 2361 (2021-2022 Reg. Sess.) (Assembly Bill 2361). The People concede that the changes apply retroactively to a minor, like T.A., whose case was not final when they took effect. Nevertheless, the People argue, no remand is necessary here because there is no reasonable probability the juvenile court would have reached a different result under the amended law. We agree with the People and therefore affirm.

## I. BACKGROUND

T.A. (born 1995) was tried and convicted in adult court of a second degree murder committed in 2012, as well as gang and firearms enhancements of that charge. In 2018, he was sentenced to a prison term of 40 years to life.

In an April 2020 unpublished opinion, Division One of this court conditionally reversed the judgment and remanded for a transfer hearing in light of Proposition 57 and California Supreme Court authority. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304 (*Lara*) [Proposition 57 applies retroactively to non-final cases].)

In May 2022, after a hearing, the juvenile court granted the People's motion to transfer T.A. back to adult court and reinstated the judgment. We discuss the juvenile court's lengthy explanation of its decision below.

2

In September 2022, the Governor signed Assembly Bill 2361, which went into effect on January 1, 2023.  (Cal. Const., art. IV, § 8, subd. (c); Gov. Code, § 9600, subd. (a).)

## II. DISCUSSION

### A. *Retroactivity*

T.A. argues Assembly Bill 2361's amendments to Welfare and Institutions Code section 707 are ameliorative and that he is entitled to have those changes apply to him retroactively.  The People agree, as do we.

Welfare and Institutions Code section 707 governs the procedures for transferring a minor from juvenile court to a court of criminal jurisdiction.  Before Assembly Bill 2361, the prosecution had the burden of establishing by a preponderance of the evidence that the minor was not suitable for rehabilitation under the juvenile court system.  (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 186.)  Assembly Bill 2361 raised that burden of proof to the clear and convincing evidence standard.  (Stats. 2022, ch. 330, § 1; Welf. & Inst. Code, § 707, subd. (a)(3).)  Assembly Bill 2361 also amended Welfare and Institutions Code section 707 to require that the juvenile court's on-the-record explanation for any decision to transfer "include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Stats. 2022, ch. 330, § 1; Welf. & Inst. Code, § 707, subd. (a)(3).)

In general, ameliorative criminal legislation applies to all non-final judgments. (See *In re Estrada* (1965) 63 Cal.2d 740, 748.)  In *Lara*, *supra*, 4 Cal.5th at p. 299, the

3

California Supreme Court considered whether this general principle applied to Proposition 57, which prohibited prosecutors from charging juveniles with crimes directly in adult court and placed the burden of proof on prosecutors at transfer hearings. (*Lara*, at p. 303.) The court concluded that while "*Estrada* is not directly on point; ... its rationale does apply." (*Ibid*.) The court reasoned that "[t]he possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment," and concluded "[f]or this reason, *Estrada*'s inference of retroactivity applies." (*Ibid.*)

As of this writing, no published case has considered whether *Lara*'s reasoning also applies to Assembly Bill 2361. The parties agree, as do we, that that it does. Like Proposition 57, Assembly Bill 2361 raises the burden of proof for transferring a juvenile to adult criminal court, among other changes. Thus, Assembly Bill 2361, like Proposition 57, "reduces the possible punishment for a class of persons, namely juveniles." (*Lara*, *supra*, 4 Cal.5th at p. 303.)

The presumption of retroactivity "'"applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it."'" (*People v. McKenzie* (2020) 9 Cal.5th 40, 45.) Assembly Bill 2361 has now gone into effect, and T.A.'s case is not final. He is therefore entitled to Assembly Bill 2361's ameliorative benefits.

4

B. *Remand*

T.A. argues that remand is necessary to allow the juvenile court to consider the transfer motion under the newly applicable clear and convincing standard of proof. The People disagree, as do we.

In deciding whether a minor should be transferred to a court of criminal jurisdiction, the juvenile court is required to consider five criteria: (1) "[t]he degree of criminal sophistication exhibited by the minor"; (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction"; (3) "[t]he minor's previous delinquent history"; (4) "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor"; and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor." (Welf. & Inst. Code, § 707, subd. (a)(3)(A)-(E).) Applying these factors, the juvenile court makes a factual finding of whether the People have demonstrated that "the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (*Id.*, subd. (a)(3).)

After Assembly Bill 2361, this factual finding must be made "by clear and convincing evidence." (Welf. & Inst. Code, § 707, subd. (a)(3).) The juvenile court applied the preponderance of the evidence standard. (See *Kevin P.*, *supra*, 57 Cal.App.5th at p. 186.) "The standard of proof known as clear and convincing evidence demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable

doubt. This intermediate standard 'requires a finding of high probability.'" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.)

We must determine whether the juvenile court's application of a lesser burden of proof than is now required constitutes harmless error.[1] Where federal constitutional rights are implicated, the People must show that a fact finder's application of an incorrect and lesser burden of proof was harmless beyond a reasonable doubt per *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (See, e.g., *People v. Hurtado* (2002) 28 Cal.4th 1179, 1193-1194 [failure to instruct jury on burden of proof in commitment proceedings under Sexually Violent Predatory Act].) Constitutional rights are not implicated, however, by the purely statutory requirement that the juvenile court apply the clear and convincing standard to transfer motions under Welfare and Institutions Code section 707. Thus, the appropriate harmlessness standard is that of *People v. Watson* (1956) 46 Cal.2d 818, 836-837 (*Watson*). (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 195 (*Gonzalez*) ["We evaluate nonstructural state law error under the harmlessness standard set forth in *Watson* . . . ."]; *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 533 [in a different context, applying *Watson* to erroneous use of the preponderance of the evidence standard instead of clear and convincing evidence, where the higher standard was required by state law].) "[The *Watson*] standard requires us to evaluate whether the defendant has demonstrated that it is '"reasonably probable that a result more

---

[1] Of course, our use of the term "error" here does not imply that the trial court did anything improper, as it applied the legally correct standard at the time. Its analysis became erroneous due to Assembly Bill 2361's retroactive change in the law.

6

favorable to the appealing party would have been reached in the absence of the error.""'" (*Gonzalez*, at p. 195, quoting *Watson*, at p. 837.)

T.A. proposes that instead we should apply the harmless error analysis articulated in *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*). In that case, our Supreme Court considered whether a retroactive change in the trial court's sentencing discretion required remand for resentencing. (*Id.* at p. 1360} The court concluded that "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*Id.* at p. 1391.)

We are not persuaded that the *Gutierrez* clear indication standard applies here. When a change in the law bestows new sentencing discretion on a trial court, the appellate court may have no relevant record to review, as the trial court would not yet have exercised its discretion. The clear indication standard consequently requires an affirmance to be grounded in record evidence, rather than in speculation.

Here, in contrast, the trial court decided the People's transfer motion based on record evidence. Our question is whether the trial court would make the same decision, based on the same evidence, but under the higher standard of proof required by Assembly Bill 2361. In such a circumstance, the clear indication standard does not apply. (See *People v. McDaniels* (2018) 22 Cal.App.5th 420, 426 [clear indication standard inapplicable to deciding whether a court "is likely to repeat a choice it already made"].) Like most harmlessness inquiries, review of whether the court would make the same

7

decision, based on the same evidence but under a new standard, "involves some degree of conjecture." (*Ibid.*) But it is not so speculative as deciding in the first instance how the trial court would have exercised its discretion if it had known it had the authority to make a discretionary choice. (*Ibid.*) As such, the *Watson* standard is appropriate.

Applying *Watson*, we do not find it reasonably probable that the juvenile court would have reached a different decision under the clear and convincing standard of proof. The juvenile court's detailed discussion of its reasoning acknowledged that a few factors weighed to some extent in T.A.'s favor. T.A. had no previous criminal or delinquent history, and thus there had also been no previous attempts to rehabilitate him. (See Welf. & Inst. Code, § 707, subd. (a)(3)(C), (D).) There was also evidence of "several mental health issues as a child that progressed into [T.A.'s] adulthood," which the juvenile court found "must have impacted his overall cognitive functioning" and tended to suggest he might be less criminally sophisticated. (See Welf. & Inst. Code, § 707, subd. (a)(3)(A).)

Nevertheless, the juvenile court also found that other evidence weighed heavily against a finding that T.A. was amenable to rehabilitation under the jurisdiction of the juvenile court. The circumstances of the crime itself suggested that T.A. "possessed a high level of criminal sophistication at the time of the shooting," regardless of his previously clean record and mental health issues. The murder had been committed by T.A.'s codefendant using a stolen gun procured by T.A. and provided to the shooter, who did not otherwise have access to a gun. Evidence that T.A. and his codefendants had planned at least an assault, if not a murder, for days prior to the shooting, as well as their

8

efforts to avoid capture after the shooting, supported the conclusion that "the shooting was not impromptu" and "evidence[d] [T.A.'s] callous and criminally advanced mindset." Moreover, there was some evidence that T.A.'s current behavior included "malingering his mental health symptoms." In sum, the juvenile court found it "clear that despite his lack of criminal history and despite his mental health issues, [T.A.] possessed a substantial degree of criminal sophistication," so that factor supported a finding that he "is not fit for the juvenile court and should be transferred to adult court."

The juvenile court also found that the evidence weighed "heavily" in favor of the conclusion that T.A. could not be rehabilitated prior to expiration of the juvenile court's jurisdiction. (See Welf. & Inst. Code, § 707, subd. (a)(3)(B).) Juvenile court jurisdiction over T.A. could be extended for no more than two years after commitment to a youth facility, since he was 26 years old at the time of the transfer hearing. (See Welf. & Inst. Code, § 607, subd. (c).) He had already been incarcerated for most of a decade. Although he earned his GED in 2013, he had not participated in any educational services or job training since then. He had, however, repeatedly engaged in violent behavior towards both other inmates and prison staff, including a battery causing serious bodily injury to a peace officer. In 2020, he had pleaded guilty of two counts of resisting a peace officer, receiving a three-year prison term. The probation officer who supervises the most restrictive available juvenile program opined that they "would not be able to provide services that [T.A.] would need to rehabilitate as an adult," and that she would "fear for the safety of the youth [at the program] if [T.A.] was to be placed there, as well

9

as for the safety of the custody officers." During the transfer hearing, T.A.'s behavior was so disruptive and noncompliant that the court ordered he attend the hearing by video, and even then, sometimes his microphone had to be muted. The juvenile court opined that it "cannot conclude that he will miraculously begin to rehabilitate now if he remains in the juvenile court."

Finally, the juvenile court found the circumstances and gravity of the offense also weighed "heavily in favor of a finding that [T.A.] is not suitable for the juvenile court." (See Welf. & Inst. Code, § 707, subd. (a)(3)(E).) T.A. and his codefendants had "approached the victim en masse and confronted him," and the victim was "alone and unarmed." The victim had responded to being confronted "in a defiant but non-violent manner." Although T.A. was not the actual killer, he provided a gun to the shooter, and he "intended the result, took steps to insure it would transpire, and may have even preplanned it." After the shooting, T.A. and his codefendants took "calculated steps to avoid capture" and "showed no regard or concern for the victim." The juvenile court commented that "[t]here is no graver circumstance than one involving a stolen life," that the victim "is dead and he shouldn't be," and that T.A. was "responsible for that loss."

After weighing all the relevant factors, the juvenile court found "that on balance, the statutory criteria weigh heavily in favor of the conclusion that the minor is not amenable to juvenile court services and therefore should be transferred back to a court of criminal jurisdiction."

Given the juvenile court's reasoning, we do not find it plausible, let alone reasonably likely, that the court's decision would have been any different had it applied the clear and convincing evidence standard required by current law. Nothing in the juvenile court's comments suggests that it found this decision to be a close call, either in terms of determining the facts or weighing the applicable factors against one another, so that that the precise standard of review applied might have made a difference. As such, even though Assembly Bill 2361 applies retroactively to T.A.'s case, he has not demonstrated that remand for the juvenile court to reconsider its decision under the amended law would be appropriate.

## III. DISPOSITION

The juvenile court's order granting the People's transfer motion and reinstating the judgment is affirmed.

RAPHAEL_____

J.

We concur:

McKINSTER_____

            Acting P. J.

MILLER_____

            J.

Filed 4/11/23

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re T.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>T.A.,<br><br>     Defendant and Appellant. | E079346<br><br>(Super.Ct.No. J286190)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

Request having been made to this court pursuant to California Rules of Court, rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-entitled matter on April 7, 2023, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b). The opinion filed in this matter on March 23, 2023, is certified for publication.

CERTIFIED FOR PUBLICATION

RAPHAEL _____
                                       J.

We concur:

McKINSTER _____
        Acting P. J.

MILLER _____
        J.

1